IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PHAT T. CHAU,                                          CV. 08-6202-HU

                Petitioner,          FINDINGS AND RECOMMENDATION

    v.

ANTHONY SANTOS,
Superintendent, Oregon State
Correctional Institution,

              Respondent.

HUBEL, Magistrate Judge

    Petitioner, an inmate at the Oregon State Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition should be denied, and this proceeding dismissed, with prejudice.

## BACKGROUND

    On April 30, 1988, petitioner was indicted on charges that he, and co-defendant Dang Tran, assaulted Nam Duong and Hoang Duong on April 18, 1998, at a karaoke bar. A jury trial was held in August, 1998.

///

At trial, Hoang Duong testified that petitioner was angry because Hoang Duong had encouraged his girlfriend, Patti Lee, to obtain a restraining order against petitioner.  Hoang Duong testified to two altercations which ultimately lead up to the assault on April 18th.

First, Hoang Duong testified that in March, 1998, petitioner confronted him in a bar called Legion's and hit him in the face four times.  During this incident, petitioner was accompanied by Dang Tran and approximately twenty other young Asian males. Second, Hoang Duong testified that on April 14, 1998, there was a verbal confrontation at Grand Central Bowling.

Four days later, Hoang Duong and his brother, Nam Duong, were assaulted at the karaoke bar by a group of individuals that included petitioner and Dang Tran.  The altercation began in one of the private music rooms ("studio 3").   Petitioner, Dang Tran, and six or seven of their friends entered studio 3, which was occupied by Nam and Hoang Duong, and their friends and family.  Nam and Hoang Duong, and several witnesses testified that Dang Tran hit Hoang Duong in the mouth and then in the eye.

As the Duongs tried to exit the karaoke bar, a second altercation erupted in the lobby.  They were both hit in the head with bottles.  Neither brother saw who struck them, but Michael Redd testified that it was "obvious" that petitioner struck the blow to Nam Duong due to his proximity to Nam Duong, and a "follow-

through motion" he witnessed in petitioner's arm immediately after the blow.  Redd also testified that he witnessed petitioner's co-defendant, Tran Dang, strike Hoang Duong in the back of the head.

Two employees of the karaoke bar, and several individuals who arrived at the karaoke bar with petitioner and Dang Tran, testified that petitioner and Dang were not the individuals who wielded the bottles.  However, none of the defense witnesses were able to identify who the individual(s) were that struck the Doangs with the bottles.

Angela Fung, Nam Duong's girlfriend and a witness to the assault in the lobby, did not testify at trial.  However, on the night of the incident and then several days later, she gave consistent statements to the police implicating petitioner and Dang in the assaults.  In her April 21, 1998, police interview, Ms. Fung stated:

> As Angela walked in[to Studio 3], she saw Dang strike [Hoang Duong] forcefully with an open hand on the left side of his face.  Dang then began yelling at [Hoang Duong] again in Vietnamese.  [Hoang Duong] merely stood there.

> [W]hen she saw Dang strike [Hoang Duong], she began yelling for everyone to get out of the room. [Petitioner] and Dang left the room with the other Asian males who they were with. * * *

> * * * * *

> [A]s she and [Hoang Duong] stepped from the room, she observed that the same group of Asian males . . . were in the lobby again.  That group of Asian males began to surround Angela, [Hoang Duong] and the others.  Angela said that she and her friends were backed up against a

couch that was against a wall in the lobby.  At that
time, Dang approached [Hoang Duong] and began to yell at
him in Vietnamese. [Hoang Duong] again merely stood
there.  Angela said that Dang suddenly hit [Hoang Duong]
on the left side of his head with a bottle that he was
carrying. [Hoang Duong] continued to stand and Nam
grabbed [Hoang Duong] to protect him.

                        * * * * *

     * * * Angela then saw that [petitioner] was
approaching Nam from the right side.  Angela saw
[petitioner] hit Nam with a bottle on the right side of
his forehead.  Angela said that the bottle was a
Starbuck's Frappacino bottle that was open at the time.
Angela said that the bottle broke when [petitioner]
struck Nam on the head with it.

Resp. Exh. 124 (Statement to Detective D. Kelly).

     Petitioner was convicted of two counts of Assault in the

Second Degree, two counts of Assault in the Third Degree, and one

count of Unlawful Use of a Weapon.  Petitioner was sentenced to 140

months imprisonment, to be followed by two years of post-prison

supervision.  Petitioner's projected release date is December,

2009.

     Petitioner filed a direct appeal challenging the

constitutionality of his Measure 11 sentence.  The Oregon Court of

Appeals affirmed from the bench, and the Oregon Supreme Court

denied review.  State v. Chau, 166 Or. App. 678, 4 P.3d 774, rev.

denied, 330 Or. 412 (2000).

     Petitioner subsequently filed a petition for post-conviction

relief alleging multiple claims of ineffective assistance of

counsel and trial court error.  The post-conviction court denied

relief.    That  court  made  the  following  findings  of  fact  and
conclusions of law:

### FINDINGS OF FACT

On April 18, 1998, petitioner and his co-defendant
assaulted Hoang Duong and Nam Duong.

Counsel  adequately  investigated  petitioner's  case
and interviewed appropriate witnesses.  Petitioner failed
to prove the existence of witnesses who were not called
and who would have affected the outcome of his case had
they been called on petitioner's behalf.  Specifically,
petitioner failed to prove that . . . Angela Fung would
have testified in a manner that would have affected his
case.

### CONCLUSIONS OF LAW

Based on the findings of fact set forth above, in
the  underlying  criminal  proceedings  resulting  in
petitioner's conviction, petitioner was not denied the
right to assistance of counsel, as guaranteed by either
the United States Constitution and as articulated by the
United States Supreme Court in *Strickland v. Washington*,
466 U.S. 668 (1984), or the Constitution of the State of
Oregon.

Resp. Exh. 127.

Petitioner  appealed,  raising  a  single  claim  of  ineffective
assistance of counsel.    The  Oregon  Court  of  Appeals  affirmed,
without opinion, and the Oregon Supreme Court denied review.  <u>Chau</u>
<u>v. Santos</u>, 217 Or. App. 410, 174 P.3d 1132 (2007), <u>rev. denied</u>, 344
Or. 194 (2008).

In  the  instant  proceeding,  petitioner  alleges  that  trial
counsel was ineffective for failing to interview Angela Fung, and
introduce her testimony at trial.  Respondent moves the court to

deny habeas relief on the basis that the state court's rejection of this claim is entitled to deference under 28 U.S.C. § 2254(d).

## DISCUSSION

A claim of ineffective assistance of counsel, requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness; and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Strickland v. Washington, 466 U.S. 668, 687-88 (1987); Dows v. Wood, 211 F.3d 480, 485 (9th Cir.), cert. denied, 531 U.S. 908 (2000). Failure to satisfy either prong of the Strickland test obviates the need to consider the other. Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002); LaGrand v. Stewart, 133 F.3d 1253, 1270 (9th Cir.), cert. denied, 525 U.S. 971 (1998).

## I. Prong One: Whether Counsel's Performance Fell Below an Objective Standard of Reasonableness.

Under Strickland, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.), amended on denial of reh'g, 253 F.3d 1150 (9th Cir. 2001); Rios, 299 F.3d at 805; Dows, 211 F.3d at 486.

However, counsel need not interview every possible witness to have performed proficiently.  Riley v. Payne, 352 F.3d 1313, 1318 (9th Cir. 2003), cert. denied, 543 U.S. 917 (2004); Bragg, 242 F.3d at 1088; LaGrand, 133 F.3d at 1274.  Defense counsel's failure to interview a witness does not establish ineffective assistance of counsel when the witness's account is otherwise fairly known to counsel.  Bragg, 242 F.3d at 1088.  For example, in Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986), the Ninth Circuit held that defense counsel did not render ineffective assistance in failing to interview government witnesses, relying instead upon the witness interviews and statements taken by the prosecution.

In some instances, however, a defense attorney's reliance upon *someone else's* investigation of a witness has been held to fall below an objective standard of reasonable.  For example, in Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir. 1999), cert. denied, 528 U.S. 1198 (2000), the court held defense counsel was deficient in failing to call three boys as witnesses who claimed to have seen the victim alive after petitioner was suppose to have killed her.  Counsel's decision not to call the boys as witnesses was premised upon the boys' statements to police and defense investigators rather than counsel's own interview.

While recognizing that Strickland does not compel an attorney to personally interview every witness, the Ninth Circuit noted in Lord, that where a lawyer fails to put a witness on the stand, his

decision will be entitled to less deference if he also failed to interview the witness.  184 F.3d at 1095 n.8; see also Rios, 299 F.3d at 808 (unreasonable for defense counsel to rely upon investigation conducted by co-defendant's counsel because co-defendant's interests might conflict with those of petitioner); Alcala v. Woodford, 334 F.3d 862, 891-92 (9th Cir. 2003)(finding trial counsel's failure to investigate crime scene and his reliance on the prosecution's investigation unreasonable).

    Counsel's failure to interview Ms. Fung, or offer her testimony at trial, is not comparable to the omissions found unreasonable in Lord.  As noted above, counsel had access to two consistent statements made by Ms. Fung to the police implicating petitioner in the assault.  Ms. Fung's second statement, quoted above, was more detailed and specific than the first statement, but both statements implicated petitioner in the assault.  Petitioner points to no facts that would have suggested to counsel that Ms. Fung would switch her testimony from accusing petitioner to exonerating him, or even equivocating in her identification of petitioner.  Ms. Fung was friends with the victims, and testified before the grand jury which ultimately indicted petitioner.  In short, Ms. Fung's account of the incident was fairly known to defense counsel.

    Accordingly, I conclude that petitioner has failed to demonstrate that trial counsel's conduct fell below an objective

standard of reasonableness.  See Strickland, 466 U.S. at 689 ("fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").  Even if this court were to hold otherwise, petitioner has failed to demonstrate that he suffered prejudice as a result.

## II.  Prong Two: Prejudice - Reasonable Probability that the Result of the Proceeding Would be Different.

At the state post-conviction proceeding, petitioner offered an investigation report by Edward Kraft documenting his interview with Angela Fung.  According to Mr. Kraft, Ms. Fung made the following statements:

> ANGELA STATED PHAT DID NOT HIT ANYONE WITH A BOTTLE.  HE DID NOT HIT NAM.  SHE DID NOT SEE PHAT HIT ANYONE DURING THE FIGHT. . .  She said she does not know how [Hoang Duong] got hurt.
>
> Angela stated the next day [after the incident] she went to the Duong family home and talked to [Hoang Duong] and Nam's family.  They expressed their wishes to her that they wanted her to go to the police and tell them that Phat hit Nam with the bottle.  Angela said she did not want to do this because she did not see Phat hit anyone but feeling caught in the middle of this situation she went to the DA and gave a statement of what she saw not stating that Phat had hit Nam with a bottle.
>
> Angela stated she was subpoenaed by the DA's Office but not by the Defense.  She said she attended the first few days of trial and the day before she was to testify the DA called her to his office and told her she had been subpoenaed and she had to testify to the statement he gave her to read.  He told her this was in her best interest.  Angela said the statement that was given to

her was not even close to the statement she had given to
the DA.   Angela said she told the DA she would not
testify to the statement provided to her by their office.
She said she left and did not return to Court to testify.

* * * * *

Angela did not see Phat egging anyone on during the fight
to hit victims because he was arguing with her the entire
time she was with him.

Resp. Exh. 116.

At the post-conviction court hearing, however, post-conviction
counsel advised the court that his investigator had attempted to
get Ms. Fung to sign an affidavit consistent with the statements
made in the interview, but she "disappeared."  Resp. Exh. 125 at 9-
10.  Counsel noted that Ms. Fung had similarly "disappeared" prior
to trial.  Id.  Hence, the only evidence presented to this court
and to the state post-conviction court as to what Ms. Fung would
have testified to if called as a witness for the defense, is the
hearsay statements contained in the investigation report.

In light of the inconsistencies in Ms. Fung's statements to
the police and petitioner's investigator, the hearsay statements
contained in the investigator's report do not suffice to
demonstrate what Ms. Fung would have testified to if called as a
witness by the defense.  Compare Dows, 211 F.3d at 486-47
(rejecting claim that omitted witness would have provided useful
testimony absent affidavit from witness), with Alcala, 334 F.3d at
872 (concluding that interviews submitted at evidentiary hearing

sufficient to establish what omitted witness's testimony would have been).

Similarly, given Ms. Fung's absence at trial and at the post-conviction proceeding, petitioner has made no showing that Fung would have appeared for trial if subpoenaed by the defense. See United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), cert. denied, 488 U.S. 910 (1988) (denying ineffective assistance of counsel claim based on failure to call witness because there was no evidence that the witness would have testified for the defense). Finally, it is worthy of note that had Ms. Fung testified, she would have been subjected to impeachment based upon her prior inconsistent statements to police.

For all of these reasons, I find that petitioner has failed to demonstrate that, but for counsel's failure to interview and call Ms. Fung as a witness, there is a reasonable probability that the result of the proceeding would have been different.  Hence, the post-conviction court's rejection of petitioner's ineffective assistance of counsel claim is not contrary to, or an unreasonable application of, clearly established federal law; nor is it premised upon a unreasonable determination of the facts.  Accordingly, habeas relief is not warranted.  28 U.S.C. § 2254(d)(1) & (2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 21, 2009.  If no

objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due November 4, 2009. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this __6th__ day of October, 2009.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge